## MALCOMB SINCLAIR *vs.* THE MAYOR AND CITY COUNCIL OF BALTMORE,

*Power of municipal corporations in regard to permitting the Obstruction of streets for building purposes—City of Baltimore not liable for the Non-enforcement of an ordinance prescribing the Precautions to be observed in such cases— What is a proper precaution.*

There can be no question of the right of a municipal corporation, having " exclusive power over the streets," to determine by ordinance, to what extent and under what circumstances they may be incumbered with building materials ; but such regulation must be reasonble, and the obstruction not allowed to continue longer than is necessary.

An ordinance regulating such obstruction is a mere police ordinance, intended to protect the streets against undue obstruction, and the public in the right of travel. It manifestly belongs to that class of ordinances which require the agency of a police force to execute them, and to see that they are observed, and if there be violations of their provisions, that the penalties be enforced.

But if the city has no such police agency of its own, and is not allowed the direction and control of the police force within its. limits, it has no means at its command to enforce the ordinance, and it would therefore be unjust to hold it liable for injuries result- ing from a failure to enforce the ordinance or regulation.

By the Police Act of 1867, ch. 367, there is provided an independent. police department for the City of Baltimore. That department does not derive its powers from, and have prescribed to it its duties. by, the municipal government ; but the Board of Police Commissioners, clothed with the power of appointment of all subordinates, are appointed by and derive their powers from the State, and are therefore State Officers. They are in no legal sense officers and agents of the city.

The power of the city government is confined to mere matter of regulation by proper ordinance, as to the manner and extent of the deposit of building material in the streets, and the enforcement of

the regulation is entirely dependent upon a separate and independent police department over which the city has no control.

.An ordinance of the city required deposits of building material in any of the streets, lanes or alleys of the city, to be designated during the night by displaying a lighted lamp or lantern at such part of the same as to be easily observed by persons passing along the street. In an action against the city to recover damages sustained by reason of a light so placed having been permitted to go out, it was HELD:

'That the only ground upon which the city could possibly be held liable would be that the ordinance was not a reasonable and proper exercise of the authority delegated to the city for the regulation of the subject-matter; that, instead of lights, some more effective signal of warning should have been required. That this ordinance ·or an ordinance like it, had been in force for a good many years; and the Court were by no means prepared to say, that if the terms . of the ordinance were faithfully observed, the signal required to be displayed would not be reasonable and sufficient.

'It is true the public have a right to the free passage of the streets, but yet that right cannot at all times be enjoyed entirely free of obstruction.

.For purposes of improvement in cities and towns, streets, from necessity, must sometimes be at least partially obstructed; and all .that can be done to prevent accident, is the deposit of the material in a reasonable place, and to place guards, or give reasonable precautionary signals to warn the public.

'The case of *The Mayor and City Council of Baltimore vs. O'Donnell*, 53 *Md.*, 110, distinguished from this case.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception*—The testimony on both sides being closed, ·the plaintiff offered the two following prayers:

1. That if the jury find from the evidence in this cause, that Fayette street, a public street of the City of Baltimore, was, on the night of the 26th·March, 1881, obstructed by .a pile of bricks and mortar lying in front of two houses

then being erected on said Fayette street, and that said obstruction necessarily rendered Fayette street dangerous and unsafe for public travel, then it was the duty of the defendant, by proper guards, signals, lights, or other precautions, to warn persons of the dangerous condition of said street, so as to prevent injuries to persons passing along said street; and if the jury further find, that, on the night of said 26th of March, 1881, at the time of the accident to the plaintiff, there was no light or other signal on said obstruction, and that the defendant did not use ordinary care in providing proper precautions to warn the public of the dangerous condition of said obstruction, in consequence whereof the plaintiff was, on said night, while driving with ordinary care along said street, thrown from his carriage and injured, then the plaintiff is entitled to recover in this action.

2. That in estimating the damages to be given, the jury may consider the health, and mental and physical condition of the plaintiff before the injury complained of, as compared with his present condition of mind and body, in consequence of the injury, and whether the injury is, in its nature, permanent, and how far it is calculated to disable the plaintiff from engaging in those employments and pursuits for which, in the absence of the injury, he would have been qualified, and also the physical and mental suffering to which he has been subjected, by reason of the said injury, and to allow such damages as, in the opinion of the jury, will be a fair and just compensation for the injury he has sustained.

And the defendant offered the following prayer:

That there is no sufficient legal evidence of negligence on the part of the defendant, its officers or agents, in this case, to entitle the plaintiff to recover, and the verdict of the jury must be for the defendant.

The Court (BROWN, J.) rejected the plaintiff's prayers, and granted the prayer of the defendant.

The plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before MILLER, ALVEY, ROBINSON, and IRVING, J.

*Nicholas P. Bond*, and *Robert D. Morrison*, for the appellant.

*John P. Poe, City Counsellor*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

This case is fully within the principle of *Altvater's Case*, 31 *Md.*, 462, and must be ruled by it. There is nothing in the facts of the present case to distinguish it in principle, and the plaintiff failing to present a case upon which he could recover, the Court below could not do otherwise than direct a verdict for the defendant.

The grievance here complained of is not that the street was allowed to remain out of repair, or that a dangerous obstruction was produced therein while in course of repair, but that there was allowed to remain in it a dangerous obstruction, of which the plaintiff was unwarned, and by reason of which the injury occurred. The obstruction consisted of a pile of building material in front of a lot, upon which a building was in course of erection, on East Fayette street. The accident occurred about half-past ten o'clock at night. There was no guard or light to give warning of the presence of the obstruction, the signal light having gone out before that time; and the plaintiff, in driving along the street, ran his buggy over or against the pile of material, which resulted in the accident, causing a painful injury to himself personally, the death of his horse, and the breaking of his vehicle.

If there could be any liability on the part of the city to the plaintiff for the injury sustained, it must result from

some misfeasance or non-feasance by it. What, then, was the duty of the defendant in the execution of the powers delegated to it? By the charter of the city "all the streets, lanes, or alleys opened in the manner directed, shall be public highways, and be subject to the laws, regula-lations, and ordinances applicable to public streets, lanes, or alleys, or parts thereof, in said city." The city has passed ordinances applicable to the streets, and to regu-late the deposit of building material therein, allowing not more than one-third of the street, clear of the foot-ways, in front of any lot on which a building is being erected or repaired, for the deposit of such material; and by further ordinance of the city, it is provided, that—

"Whenever any piles of bricks, stones, lumber, or other building material, shall be left in any of the streets, lanes, or alleys of the city, they shall during the night be desig-nated by displaying a lighted lamp or lantern at such part of the same as to be easily observed by persons passing along the street; and any person or persons, or body corporate, who may violate the provisions of this section, shall forfeit and pay a fine of not less than five nor more than ten dollars for each and every offence, to be recovered as other fines and penalties are recoverable." *City Code of* 1879, *Art.* 7, *sec.* 14; *Art.* 47, *sec.* 2, *p.* 1174.

There can be no question of the right of a municipal corporation, having "exclusive power over the streets," to determine, by ordinance, to what extent and under what circumstances they may be incumbered with building materials; but such regulation must be reasonable, and the obstruction not allowed to continue longer than is necessary. *Commonwealth vs. Passmore,* 1 *Sergt. & R.,* 217; *Chicago City vs. Robbins,* 2 *Black,* 418, 423; 2 *Dillon Municipal Corporations* (3rd *Ed.*), *secs.* 731, 732. Now, what is the nature of this ordinance, and by what agency is it to be executed? It would seem clear that it is a mere police ordinance, intended to protect the streets against

undue obstruction, and the public in the right of travel. It manifestly belongs to that class of ordinances which require the agency of a police force to execute them, and to see that they are observed; and if there be violations of their provisions, that the penalties be enforced. But if the city has no such police agency of its own, and is not allowed the direction and control of the police force within its limits, it has no means at its command to enforce the ordinance, and it would, therefore, be unjust to hold it liable for injuries resulting from a failure to enforce the ordinance or regulation.

By the Police Act of 1867, ch. 367, there is provided an independent police department for the city. That department does not derive its powers from, and have prescribed to it its duties by, the municipal government; but the Board of Police Commissioners, clothed with the power of appointment of all subordinates, are appointed by, and derive their powers from, the State, and are therefore State officers. They are paid by the city, it is true, and they exercise their functions within and for the city, but are not appointed as the agents or officers of the city government, and are not amenable to it for the faithful discharge of their duties. They are therefore in no legal sense officers and agents of the city. In section 809 of the statute, to which we have referred, among the powers and duties of the board of police, are those to prevent crime and arrest offenders, protect the rights of persons and property, and to prevent and remove nuisances in all the streets and highways; they are also required to enforce all laws and ordinances of the city not inconsistent with the statute. And by section 824 of the same statute, it is declared that the Act is not to be so construed as to give the Mayor and City Council "any control over said board or any officer of police, policeman or detective appointed thereby."

It is plain, therefore, that the power of the city government is confined to mere matter of regulation by proper

ordinance as to the manner and extent of the deposit of building material in the streets, and the enforcement of the regulation is entirely dependent upon a separate and independent police department, over which the city has no control.

The only ground upon which the city could possibly be held liable would be that the ordinance is not a reasonable and proper exercise of the authority delegated to the city for the regulation of the subject-matter; that, instead of lights, some more effective signal of warning should have been required. But these ordinances, or ordinances like them, have been in force for a good many years; and we are by no means prepared to say, that if the terms of the ordinance were faithfully observed, the signal required to be displayed would not be reasonable and sufficient.

It is true, the public have a right to the free passage of the streets, but yet that right cannot at all times be enjoyed entirely free of obstruction. For purposes of improvement in cities and towns, streets, from necessity, must sometimes be at least partially obstructed; and all that can be done to prevent accident, is the deposit of the material in a reasonable place, and to place guards, or give reasonable precautionary signals, to warn the public.

The case of the *Mayor and City Council of Baltimore vs. O'Donnell*, 53 *Md.*, 110, has been much relied on by the plaintiff's counsel, as qualifying *Altvater's Case*, but we do not so understand it. That was a case altogether differing in its circumstances from the present. It was a case where the Mayor and City Council had, by ordinance, directed a street to be repaired, and made a contract for the work, and in the course of which an obstruction was erected, and left without signal, that caused the injury complained of. The city was bound to keep the street in a safe condition to travel, subject to the right of the occasional partial obstruction, before referred to, justified from

necessity; and although the work was let out by contract, the corporation still remained in charge, with the care and control of the street, while the work was going on, and which, in legal contemplation, was the work of the city itself. In such case, the duty and liability rest primarily, *as respects the public,* upon the corporation. This was *O'Donnell's Case,* and we think the decision there made was founded upon quite a different principle from that involved in this case. This is doubtless a hard case, but under the provisions of the existing statutes the Courts are powerless to afford a remedy.

The judgment must be affirmed.

*Judgment affirmed.*