(91 South. 514)

No. 24597.

**SMITH v. NEW ORLEANS RY. & LIGHT CO.**

(March 20, 1922. Rehearing Denied May 1, 1922.)

*(Syllabus by Editorial Staff.)*

</div>

1. **Carriers** ☞287(1) — **Open space between ties on neutral ground not maintained as way for pedestrians held not to impose liability.**

An open space between the ends of the cross-ties of an electric railroad on neutral ground in a street not maintained as a way for pedestrians *held* not dangerous or violative of a municipal ordinance requiring the space occupied by the tracks to be kept in repair, so as to impose liability for injury to a boy step-

ping therein while attempting to board a moving train.

**2. Street railroads ⬤⟹86(2) — Frog-blocking law held inapplicable to space between cross-ties.**

Act No. 177 of 1912, requiring railroads to fill all angles in frogs and cross-ties, etc., if applicable to street railways in cities, did not apply to an open space 3½ inches deep between the ends of cross-ties on neutral ground not maintained as a way for pedestrians.

**3. Street railroads ⬤⟹86(2)—Ordinance requiring guarding of excavations held inapplicable to space between cross-ties.**

An ordinance requiring excavations in streets to be marked at night by red lanterns did not apply to an open space between cross-ties of a street railroad at a point on neutral ground not maintained as a way for pedestrians.

**4. Carriers ⬤⟹287(1)—Path adjoining street car tracks on neutral ground held not invitation to public to use it in boarding cars.**

A walk adjoining street car tracks on the neutral ground of a street not maintained as a way for pedestrians, which path did not extend to the street crossing and was obviously intended to be used only by employés in opening or closing a switch, was not an invitation to the public to walk there in boarding cars.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Frank W. Smith against the New Orleans Railway & Light Company. From a judgment for plaintiff, defendant appeals. Judgment annulled, and demand rejected.

Dart, Kernan & Dart, of New Orleans, for appellant.

E. M. Stafford and H. W. Robinson, both of New Orleans, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

O'NIELL, J. Defendant has appealed from a verdict and judgment allowing plaintiff $17,500 damages for personal injuries inflicted upon his minor son. The boy was run over by one of the cars of the Spanish Fort train, and his leg was so mangled that it had to be amputated above the knee.

The accident happened at night, near 8 o'clock, out on the neutral ground, in Canal street, between Broad and White streets. Young Smith, over 15 years of age, called to see a young lady, residing on the uptown side of White street, near Canal street. He was told that she had spent the day at Spanish Fort, and had left a message for him to meet her there. Leaving the house on White street, he walked to the uptown side of Canal street, intending to catch the train at Broad street, where it stopped regularly. The next regular train stop was seven blocks beyond Broad street, towards Spanish Fort. When young Smith had come to the uptown side of Canal street, he saw that the train consisting of a motor car and three trailers, had stopped at Broad street. He ran diagonally across the uptown side of Canal street, to the neutral ground, across the car tracks, and walked rapidly along the lower edge of the neutral ground to the center of the square between White and Broad streets, where he intended to board the train as it passed. It had already left Broad street. No one except the boy himself witnessed the accident. According to his testimony, as he reached for the handhold on the first trailer, he stepped into an open space between the ends of two cross-ties, at which moment, the step of the car struck his right leg and knocked him down, the right leg falling across the rail and being crushed. We infer that his stepping into the hole or open space between the cross-ties caused him to lose his equilibrium and miss the handrail on the car. It is averred in the petition that the boy's foot got caught between the ends of the cross-ties, but the averment is not borne out by his testimony. That, however, in our opinion, is not important.

Plaintiff charges fault or negligence on the part of the railway company as follows:

(1) That the construction of the switch track, particularly the open space between the cross-ties, where the accident occurred, was dangerous to pedestrians, and particularly to those who might attempt to board the cars there; (2) that the construction was a violation of a municipal ordinance requiring the company to maintain in a safe condition the streets occupied by the company's car tracks, between the rails and for a distance of a foot beyond or outside of the rails; (3) that the switch construction was installed without the approval of the city engineer; (4) that the company violated a state law and a municipal ordinance in neglecting to cover the space between the cross-ties, or to have a red lantern on the switch stand, where the accident occurred; and (5) that the company maintained a shelled footpath along the lower edge of the neutral ground, where the accident occurred, which served as an invitation for the public to walk there and even to board trains there.

Defendant denied all of the allegations of negligence on its part, and alleged that the accident was caused by the recklessness of the young man in attempting to board a moving train at a place where passengers were not expected to get on or off.

[1] It does not appear that the construction of the switch and its mechanism, or the open space between the ends of the cross-ties, was dangerous to the public, considering the location of the contrivances, on the neutral ground occupied by the railway, far out in the residence section of the city. There are no sidewalks along the neutral ground out there. The space is ornamented with grass and shrubbery, and is not maintained as a way for pedestrians to go from one street crossing to another. The city engineer, as a witness for plaintiff, testified that the construction complained of was such as should have been deemed safe, before the accident. The engineer of the railway

company testified that the construction was in accord with all such constructions similarly located. The construction had remained in that condition nearly 10 years without arousing any complaint or suggestion of its being dangerous to the public. The open space between the ends of the cross-ties, into which the boy stepped, was only 3½ inches deep, and about 10 inches wide. The space contained an iron rod, connecting the end of the switch track with the mechanism that operated it. Of course, if this space between the cross-ties had been covered, the boy could not have stepped into it, and the accident could not have happened exactly as he says it happened; but a railway company is not required to make the happening of accidents impossible, especially with regard to careless or indifferent persons.

The construction of the switch was not violative of the municipal ordinance requiring the railway company to keep in repair the space occupied by its tracks for a distance of a foot beyond or outside of the rails. There was no fault or negligence in the failure to cover a space only 3½ inches deep between the ends of the cross-ties. We can hardly imagine that such a shallow opening would add to the danger of a person attempting to board a moving train, much less that the railway company should have anticipated that a person might attempt to board a moving train at that particular and out of the way place.

The method of construction of the switch had the approval of the city engineer. The original blueprints that had been submitted to him before the switch was installed were found in his office, and bore his approval. It is true the drawings did not show all of the details of the construction; but there is proof that the details were explained to the city engineer before he approved the plans; and his successor in office testified that any civil engineer would know from the blue-

prints what the details of such a construction would be.

[2] Plaintiff's attorneys refer to Act 177 of 1912, p. 321, in their charge that the construction of the switch was violative of the state law. The statute requires railroad companies, and receivers and lessees thereof, to block or fill all angles in frogs and crossings on their roads and in their yards and at divisional and terminal stations where trains are made up, so as to prevent the wedging of a person's foot in any such angle. Assuming that the statute is applicable to street railways in incorporated cities, it is quite certain that it does not apply to an open space between the ends of cross-ties—particularly a space only 3½ inches deep.

[3] The municipal ordinance requiring that excavations in the streets shall be marked at night by red lanterns is not applicable to the open space between the cross-ties, complained of in this case. The ordinance refers to excavations of such character and so situated as to be dangerous to the public. We are not aware of any law or ordinance that requires a street railway company, in a city, to hang a red lantern at every switch track or turnout. We cannot imagine how a red lantern at this switch stand, which was 10 or 15 feet away from the place where this accident occurred, might have prevented the accident. The locality was well lighted at the time, and the boy was familiar with the condition of the place, in a general way.

[4] The so-called shell walk, or path, complained of, was not an invitation to the public to walk there. It extended, not to the ends of the square, or to the street crossings, but only a short distance beyond the ends of the iron rod, running parallel with the track, by which the switch was opened and closed. The path was obviously intended to be used, and was in fact used, only by the railway employees who had to open or close the switch. It had nothing what-ever to do with the boy's going there to board a moving train.

With profound sympathy for the unfortunate youth, we are constrained to hold that his affliction is not attributable to any fault on the part of the railway company, but is the result of his own mistake—excusable as it was—in attempting to board the moving train.

The judgment appealed from is annulled, and plaintiff's demand is rejected at his cost.

Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.