TERRE HAÜTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY *v*. AULER.

[No. 25,586.   Filed January 23, 1934.   Rehearing denied April 16, 1934.]

*Beasley, Douthitt, Crawford & Beasley* and *Aikman & O'Brien*, for appellant.

*George W. Wells* and *John O. Piety*, for appellee.

FANSLER, J.—This was an action by appellee for damages on account of personal injuries alleged to have been sustained by reason of the negligence of appellant. There was a trial resulting in a verdict and judgment for appellee in the sum of $750.00. Appellant assigns as error the overruling of its demurrer to the complaint and of its motion for a new trial.

It appears from the evidence, in which there is no substantial conflict, that appellant operated an interurban railway from the City of Terre Haute southward. From the central part of the city its tracks ran south on South Seventh Street to the city limits, and thence continued south on a thirty-foot private right of way immediately west of and adjoining a public highway. About one-half mile south of the city limits, on the east side of the highway in question, was a subdivision or residence settlement known as Maryland Place, where a number of people who worked in the city resided. About two years prior to appellee's injury, upon petition of residents of the locality, appellant established a regular stop at Maryland Place for the purpose of letting off and taking on passengers on signal. There were other stops within one-quarter mile north and one-quarter mile south of Maryland Place. At the time the stop was established, appellant placed gravel on its right of way and levelled it to make a smooth place for passengers boarding and alighting from its cars; placed a sign with the name Maryland on one of its poles; and established a signal light, with a lever for

lighting, for the purpose of signaling cars to stop. At this point appellant's right of way is joined on the west by fenced farm land. At the time the stop was established, a private driveway led from the highway across appellant's tracks to a gate entering a field. There was a side-ditch between appellant's right of way and the traveled way of the highway, in which a large sewer pipe had been placed and covered with earth to permit passage over the private drive way, and this way was used by passengers approaching and leaving appellant's right of way. About a year prior to the date in question the highway was paved and the grade changed. As a part of the work, the side-ditch adjoining appellant's right of way was reconstructed and the sewer pipe and fill in the private driveway were taken out and the private driveway thus destroyed. Thereafter someone placed a plank ten to twelve inches wide, about two inches thick and fifteen feet long, across the side-ditch; the plank projecting a few feet on to appellant's right of way. This plank was used by residents of the community and visitors, who used appellant's cars, as a means of crossing the ditch. The ditch was four to six feet deep in the center, and at times was muddy and contained brush, weeds, and old wire. The plank seems to have been used regularly by all persons who boarded and left the cars at the Maryland Stop, both in the daytime and at night. It does not appear that before appellee's injury any one had difficulty in using it, nor that it was out of repair or changed in any manner from its original condition at the time of appellee's injury. Appellee had knowledge of the plank and its use and had used it in crossing the ditch to the traveled way of the highway on prior occasions, both in the daytime and at night. Some of the travelers on appellant's cars used a flashlight for crossing the plank at night.

On the night she was injured, appellee boarded one of appellant's cars in the City of Terre Haute between seven and eight o'clock p. m., paid the conductor the regular fare to carry her to the Maryland Stop, and when the car arrived there she alighted. It was raining at the time and very dark. She started to cross from appellant's right of way to the highway, by means of the plank, feeling her way with an umbrella. She located the plank and started across, and, when about the middle of the ditch, she slipped and fell into the ditch injuring her hand and wrist. She went to the house of her daughter in Maryland Place, and at about eleven o'clock returned with her daughter, who carried a lantern, recrossed the plank, and went back to the city on one of appellant's cars.

Appellant contends that under this state of facts the appellee was not entitled to recover.

Negligence is always based on neglect of duty. Appellee's action is upon the theory that the rule applying to railway stations applies. This rule is quoted by Elliott, J., from Bishop Non-Contract Law, in the case of *Lucas* v. *The Pennsylvania Company* (1889), 120 Ind. 205, 21 N. E. 972, as follows: "The depot and connected grounds, visited by coming and going passengers, should be fitted up with a careful regard to their comfort and safety. The approaches, the tracks around, the platforms and places for entering and leaving the cars, the passages to the cars; every spot likely to be visited by passengers seeking the depot, waiting at it for trains, or departing; should be made safe and kept so, and at reasonable times should be lighted. And passengers not in fault, injured through a neglect of this duty, may have compensation."

It is obvious that the rule as stated has reference to what are ordinarily known as steam railroads maintaining station-houses and like structures in cities, and it is

readily seen that there would be great difficulty in applying it to street car companies operating on city streets which they do not control, and stopping at frequent intervals in the public way for the purpose of receiving and discharging passengers.

In the method of handling passengers, the so-called interurban electric railroads occupy a place somewhere between the ordinary steam road and the city street car company. It has been seen that appellant operated its cars on the public streets until it reached the city limits of Terre Haute, after which, though operating on private right of way adjoining the highway, it regularly made stops for passengers at intervals of a quarter mile or less, and that the purpose of these stops was to accommodate persons living in community settlements, many of whom traveled to the City of Terre Haute to engage in their work or business. The relationship between the company and these patrons must be the same as though they lived within the city limits and used the cars in the same manner.

No rule of law has been pointed out, nor do we know of one, that put upon appellant the duty of maintaining lights at each place where it stopped on signal to accept or discharge passengers. Nor have we seen an authority which holds that a steam railroad is required to provide lights at places where its local trains might stop, but where it maintained no station or establishment.

It is contended by appellee that "it was the duty of the appellant to use ordinary care in providing a reasonably safe way for its passengers to pass to and from the stop in question to the public highway." We have carefully examined the authorities cited by appellee and find none that extends the rule so far as to require a carrier to maintain the public ways approaching its premises. It is true that, if a carrier establishes a walk or other passage-way in the public highway, lead-

ing to and connecting with its premises, and exercises supervision over it, it will be liable if it fails to exercise ordinary care in the maintenance thereof. *Skottowe* v. *Oregon Short Line, etc., R. Co.* (1892), 22 Ore. 430, 30 Pac. 222, 16 L. R. A. 593, and note.

But the element of establishment, supervision, or control is found present in every such case. In the instant case the plank across the ditch was not established by the appellant. The community was outside of any incorporated city or town, and the plank seems to have been placed by some member of the community, and to have been adopted by use by the members of the community who traveled on appellant's cars. It seems to have been deemed safe and suitable by the residents of the community. In incorporated cities and towns the residents of the community act through legally constituted officers in establishing streets and sidewalks and traveled ways, but in smaller, unorganized communities such ways are usually established by common consent and use. It appears from the evidence that the residences making up the community were separated from the appellant's right of way by the highway. If it could be said that appellant was responsible for the character of way across the side-ditch adjoining its right of way, why not a like responsibility for the means of crossing the side-ditch on the opposite side of the highway, and why not for the safety of the highway itself as a passage-way for pedestrians? *Quimby* v. *Boston & Maine R. Co.* (1879), 69 Me. 340.

We can find no authority holding that there is a duty upon a carrier to see that any such ways are safe; nor is a carrier bound to refuse to accept or discharge passengers at such a place. The residents of the community had a right to adopt such traveled ways as they saw fit, and if a passenger chose to alight from the appellant's cars on a dark night, in a place where the roads

and sidewalks beyond appellant's right of way were rough, narrow, or doubtful, rather than at a place where they were smooth, wide, and well maintained, it was not the duty of appellant to forbid it.

It is urged that the bridge in question was partly on appellant's right of way. The ditch over which the plank formed a passage was in the public highway. It appears that the plank more than spanned the ditch, and thus overlapped slightly on appellant's right of way, but the structure was used to overcome an obstacle over which appellant had no control and which was on the public land; and the fact that the appellant tolerated the end of the plank resting upon its property, is not sufficient to charge it with responsibility for the method of passage.

In view of our conclusion, it is unnecessary to discuss the other errors assigned.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Treanor, J., dissents.

### DISSENTING OPINION.

TREANOR, J.—It seems elementary that all carriers of passengers have a duty to maintain a reasonably safe way of ingress and egress to and from the point on its private right of way where its cars stop to take on and let off passengers. It appears from the facts in the instant case that appellant's passengers were required to cross a ditch five or six feet deep in order to reach the point on appellant's right of way where appellant's cars stopped to receive and discharge passengers. The ditch was between appellant's right of way and an adjoining highway; and across the ditch was a board which was used as a bridge, the board being about 15 to 18 feet long, 10 to 12 inches wide and 1½ to 2 inches thick. Passengers getting on and off of appellant's cars

at the stop passed over this one-board bridge, which was the only means provided for appellant's passengers to pass from the stop to the highway and from the highway to the stop. Appellant received and discharged passengers at the stop both in the daytime and in the night time. No light was provided. In *Haselton* v. *Portsmouth, etc., R. Co.* (1902), 71 N. H. 589, 53 Atl. 1016, it was held that where a platform is built by the side of a street railroad and used by it, and the company regularly stops its cars there to take on and discharge passengers, this fact justifies the finding that the company has adopted the platform and invited the public to use it in getting on and off the cars, the court saying:

> "Having adopted the platform and invited the public to use it, it is too elementary to require discussion or citation of authority that they were bound to maintain it in a reasonably safe condition, having reference to the purposes for which they had adopted it, and the uses they had invited the public to make of it. Whether it was in a reasonably safe condition for such purposes and uses, and, if not, whether the plaintiff was injured in consequence, or as a result of his own negligence, were, upon the facts disclosed, questions for the jury."

In the instant case it appears that the appellant did not place the board over the ditch but it is beyond question that appellant adopted this as a means of ingress and egress to and from the point on its right of way where its passengers were received and discharged from its cars; and a part of the one-board bridge was upon appellant's right of way. We think it is correct to say that appellant having adopted the one-board bridge and having invited the public to use it, "it is too elementary to require discussion or citation of authority that they were bound to maintain it in a reasonably safe condition."

It seems to the writer that instruction No. 13 given

by the trial court stated the law as applicable to the facts of this case. That instruction is as follows:

"You are instructed that if you should find by a preponderance of all the evidence in this case, that for a long time prior to the time plaintiff received her alleged injuries, defendant had established a stop at the point where plaintiff received her said injuries, for the purpose of taking on and letting off of passengers, and that the way provided for passengers to leave said stop, was for such passengers to get off on the west side of the track, pass over the track, and continue east of the track to a plank that extended over the ditch in controversy; and you further find, that defendant had provided no other way and had adopted this way for such passengers to leave said stop, and reach the highway, then it was the duty of the defendant to use reasonable care to see that said passageway over said ditch was reasonably safe for its passengers to pass over, and if you find it failed to perform this duty, you may find defendant guilty of negligence."

In the opinion of the writer the appellant was under a duty to furnish a reasonably safe means of ingress and egress to and from the point on its right of way where it received and discharged passengers. Consequently it was a question for the jury to determine whether or not under all the circumstances of the case this duty had been discharged.