# THE TAXICAB COMPANY OF BALTIMORE CITY
## *vs.* THE MAYOR AND CITY COUNCIL
## OF BALTIMORE.

*Baltimore City: nuisances in streets; liability of City and Board of Police Commissioners.*

A municipal corporation is not responsible for injuries received through the failure of third parties to observe an ordinance that the corporation had no power to enforce.          p. 370

It is the duty of the Mayor and City Council of Baltimore to pass all proper ordinances authorized by its charter in regard to the prevention and removal of nuisances which may not be in conflict with the duties imposed upon the Board of Police Commissioners.                     pp. 368-369

The Board of Police Commissioners are not the officers or agents of the City of Baltimore.                    p. 367

Under the Act of 1898, Ch. 123, enlarging the powers of the Mayor and City Council of Baltimore, it is the duty of the Police Department to enforce all laws and ordinances of the City, but in the discharge of their duty the Board of Police Commissioners are not subject to the control of the Mayor and City Council of Baltimore.               pp. 369-370

In violation of an ordinance of the Mayor and City Council of Baltimore prohibiting the placing or leaving of building materials, etc., in the streets of the City at night, without any light, etc., a contractor engaged in repairing and altering a building left such materials in one of the streets of the City without any such light, in consequence of which a taxicab of the plaintiff was greatly damaged; *held,* that the City was not responsible for such injury.          p. 365

*Decided June 12th, 1912.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Lawrence J. McCormick* and *Edwin J. Wells,* for the appellant.

*Alexander Preston* (with whom was *S. S. Field* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

The declaration in this case, which was brought by the Taxicab Company of Baltimore City against L. F. Johnson, L. F. Johnson, Inc., Christ Methodist Protestant Church and the Mayor and City Council of Baltimore, alleges that the "said L. F. Johnson, L. F. Johnson, Inc., and Christ Methodist Protestant Church, and each of them, placed and allowed to remain for a long time a large quantity of sand and other building material in the public highway of Baltimore City, known as North avenue, at or near its intersection with Retreat street; that said sand and other material were placed so as unnecessarily to obstruct the highway and in an improper and negligent manner, and during the night time were left without a light or signal to indicate danger as required by law, or City Ordinance, and in the night time of January 10th, 1911, said defendants negligently permitted said obstruction to remain on and upon said North avenue, at or near the intersection aforesaid, and at said time, said defendants negligently permitted said North avenue, at or near said intersection, to be and remain in bad repair and condition by reason of the said obstruction, and said defendants at said time negligently permitted said North avenue at said intersection to remain in an unsafe condition for ordi-

nary travel by reason of said obstruction, in consequence whereof a cab of the plaintiff, being operated by the agents or servants of the plaintiff, at said time passing along North avenue, at or near said intersection, collided with said obstruction and was thereby violently diverted from its course and thrown with great violence against a telegraph pole, and as a consequence of said accident the plaintiff's cab was greatly damaged and the plaintiff suffered great loss; and the plaintiff says that the damages as aforesaid were directly caused by the negligence and want of care of the defendants and without fault or want of care on the part of the plaintiff, directly thereto contributing."

The Mayor and City Council of Baltimore pleaded that "it did not commit the wrong alleged," and the evidence shows that, on the 10th of January, 1911, between twelve and one o'clock at night, one of the taxicabs of the plaintiff, while being operated by its servant or agent along North avenue, one of the streets of Baltimore City, and going west at the rate of between eight and ten miles an hour, struck a pile of sand, which had been placed and left in the street without a lighted lamp or lantern to warn persons using the street, by a contractor or workmen engaged in repairing or erecting Christ Methodist Protestant Church, and was suddenly diverted from its course against a telegraph pole and injured.

At the close of the plaintiff's testimony the Court below granted a prayer to the effect that there was no evidence in the case legally sufficient to entitle the plaintiff to recover against the Mayor and City Council of Baltimore under the pleadings.

It appears from the docket entries that the case was dismissed by the plaintiff in open Court as to L. F. Johnson, Inc., and Christ Methodist Protestant Church, and that there was a judgment of *non pros* as to L. F. Johnson, and this appeal is from a judgment for costs on the verdict in favor of the City.

Even when viewed in the light most favorable to the plaintiff, the only charge in the declaration against the Mayor and City Council of Baltimore is that it permitted the sand to remain in North avenue at night without a light to warn persons using the street of danger, and the evidence fails to show that it was placed there by anyone employed by. or engaged in work for the City. The primary question, therefore, is, can the City be held liable for injuries alleged and shown to be due to the fact that the obstruction was left in the street without a light or signal of danger?

In the case of *Baltimore* v. *Marriott,* 9 Md. 160, decided in 1856, where an action was brought to recover damages for an injury sustained by the plaintiff, in consequence of the alleged negligence of the Mayor and City Council of Baltimore, in not preventing or removing an accumulation of ice" on the footway on Fayette street," on which the plaintiff slipped and fell and broke his knee cap, the Court said: "The Act of 1796, Ch. 68, incorporating the City of Baltimore, among other things, provides, that the corporation 'shall have full power and authority to enact and pass all laws and ordinances necessary to preserve the health of the City, *and to prevent and remove nuisances.'* It is a well settled principle that when a statute confers a power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary but imperative, and the words, 'power and authority,' in such case, may be construed *duty and obligation.* * * * We are of opinion, that the effect, of the provision in the statute just cited, was to place the corporation of Baltimore, in regard to their obligations to prevent and remove nuisances, upon the same footing which is held by individuals and private corporations. * * * One of these burthens was, the obligation to keep the City *free from nuisances.* * * * In order that the City should relieve itself from the obligation, it was not only necessary that it should pass ordinances sufficient to meet the exigencies of the case, but it was also bound to see that those ordinances were en-

forced. To pass an ordinance, and not enforce it, would be the same as if none had been passed, so far as the public interests were concerned."

After the passage of the Act of 1867, Ch. 367, creating an independent police department for Baltimore City, and imposing upon it the duty of enforcing, within the City limits, all laws and ordinances, the case of *Altvater* v. *Baltimore,* 31 Md. 465, was decided upon the following statement of facts: "The plaintiff, Elizabeth Altvater, when passing along Saratoga street, in the winter of 1868, was thrown down by being run against by a sled going along that street at a rapid rate of speed. She was seriously injured by the accident. Before the happening of this accident, a large crowd of persons congregated daily on the said street, and they had been in the habit of doing so for weeks previously, and this crowd had rendered travel on the street inconvenient and dangerous, from the speed and number of sleds used, thereby becoming a nuisance. A police officer said he had arrested several of these persons, and they had been discharged by the magistrate." The Court held that the City was not liable for the injury sustained by the plaintiff, and in the course of the opinion JUDGE STEWART said: "The Code of Public Local Laws, Art. 4, sec. 808, makes it the duty of the Board of Police to 'prevent and remove nuisances' in all the streets of the City of Baltimore, and the supplementary Act of 1867, Ch. 367, imposes similar duty upon the Board of Police Commissioners, as they are denominated in the supplement. Whilst it is the duty of the Mayor and City Council of Baltimore, to pass all proper ordinances authorized by their charter in regard 'to the prevention and removal of nuisances,' and which may not conflict with the duties imposed upon the Board of Police Commissioners (Code of Public Local Laws, Art. 4, sec. 32) they are deprived of the power of enforcing them."

"That duty has been imposed upon the Board of Police Commissioners, who have been substituted as the general agency, to enforce the ordinances of the City."

"The Board of Police Commissioners are not made authorities of the City as such, by any provision of law; that part of Article 4, section 822 of the Public Local Laws, which made them such, having been repealed by the supplementary Act of 1867, Ch. 367.

"Article 4, section 32 of the Public Local Laws, provides that 'no ordinance heretofore passed, or that shall hereafter be passed, by the Mayor and City Council of Baltimore, shall hereafter conflict or interfere with the powers or the exercise of the powers of the Board of Police of the City of Baltimore hereinafter created; nor shall the said City, or any officer or agent of the corporation of said City, or of the Mayor thereof, in any manner impede, obstruct, hinder or interfere with the said Board of Police, or any officer, agent or servant thereof or thereunder."

"The supplement of 1867, Chapter 367, forbids any construction that would give any control over said board, or any officer of police appointed thereby. Although they exercise authority, within the City, for public purposes and objects, and to aid in maintaining good order therein, they have not derived their power from the corporation, nor have they been made amendable to the City for the faithful discharge of their duties.

"Amongst their other duties, they are specifically required 'to prevent and remove nuisances within the City.'

"Under these circumstances, the duties and obligations of the Mayor and City Council of Baltimore, must be taken as qualified and limited by the provisions of the law creating the Board of Police Commissioners.

"When the case of *Baltimore* v. *Marriott,* 9 Md. 160, was adjudicated in 1856, the original Act of 1796, Chapter 68, incorporating the City of Baltimore, was in full force, unimpaired by the subsequent legislation establishing the Board of Police Commissioners. Code of Public Local Laws, Art. 4, 806, Act of 1867, Ch. 367."

"According to the law then existing, the City of Baltimore possessed not only the power to pass ordinances 'to pre-

vent and remove nuisances,' but the unrestricted ability through its own police to enforce them."

Without clear and specific provision of law, it would be a harsh construction to hold the Mayor and City Council of Baltimore responsible for the wrong and injury complained of in this case, in not preventing and removing the alleged nuisance, whilst they not only had not the power to prevent it, but were emphatically forbidden to interfere with the power over the subject-matter, given to another body of officials.

*Altvater's Case* was followed and approved in the case of *Sinclair* v. *Baltimore,* 59 Md. 592, which resembles so closely in all respects, the case we are here considering, that a discussion of the case at bar must necessarily involve a repetition of much of what was there said. JUDGE ALVEY, after stating that the case was fully within the principle of *Altvater's Case* says: "The grievance here complained of is not that the street was allowed to remain out of repair, or that a dangerous obstruction, was produced therein while in course of repair, but that there was allowed to remain in it a dangerous obstruction, of which the plaintiff was unwarned, and by reason of which the injury occurred. The obstruction consisted of a pile of building material in front of a lot, upon which a building was in course of erection, on East Fayette street. The accident occurred about 10.30 at night. There was no guard or light to give warning of the presence of the obstruction, the signal light having gone out before that time; and the plaintiff, in driving along the street, ran his buggy over or against the pile of material, which resulted in the accident, causing a painful injury to himself personally, the death of his horse, and the breaking of his vehicle."

"If there can be any liability on the part of the City to the plaintiff for the injury sustained, it must result from some misfeasance or non-feasance by it. What, then, was the duty of the defendant in the execution of the powers delegated to it? By the charter of the City "all the streets, lanes or alleys

opened in the manner directed, shall be public highways, and be subject to the laws, regulations and ordinances applicable to public streets, lanes or alleys, or parts thereof, in said City.' The City has passed ordinances applicable to the streets, and to regulate the deposit of building materials therein, allowing not more than one-third of the street, clear of the footways, in front of any lot on which a building is being erected or repaired, for the deposit of such material, and by further ordinance of the City, it is provided, that,

"Whenever any piles of brick, stones, lumber or the building material, shall be left in any of the streets, lanes or alleys of the City, they shall during the night be designated by displaying a lighted lamp or lantern at such part of the same as to be easily observed by persons passing along the street; and any person or persons, or body corporate, who may violate the provisions of this section, shall forfeit and pay a fine of not less than $5 nor more than $10 for each and every offense, to be recovered as other fines and penalties are recoverable." City Code of 1879, Art. 7, sec. 14; *Id.,* Art. 47, sec. 2.

"Now, what is the nature of this ordinance, and by what agency is it to be executed? It would seem clear that it is a mere police ordinance, intended to protect the streets against undue obstruction, and the public in the right of travel. It manifestly belongs to that class of ordinances which require the agency of a police force to execute them, and to see that they are observed; and if there be violations of their provisions, that the penalties be enforced. But if the City has no such agency of its own, and is not allowed the direction and control of the police force within its limits, it has no means at its command to enforce the ordinance, and it would, therefore, be unjust to hold it liable for injuries resulting from a failure to enforce the ordinance or regulation."

"By the Police Act of 1867, Chapter 367, there is provided an independent police department for the City. That department does not derive its powers from, and have pre-

scribed to it its duties by, the municipal government, but the Board of Police Commissioners, clothed with the power of appointment of all subordinates, are appointed by, and derive their powers from, the State, and are therefore State officers. They are paid by the City, it is true, and they exercise their functions within and for the City, but are not appointed as the agents or officers of the City government, and are not amenable to it for the faithful discharge of their duties. They are therefore in no legal sense officers and agents of the City. In section 809 of the statute, to which we have referred, among the powers and duties of the board of police, are those to prevent crime and arrest offenders, protect the rights of persons and property; and to prevent and remove nuisances in all the streets and highways; they are also required to enforce all laws and ordinances of the City not inconsistent with the statute. And by section 824 of the same statute, it is declared that the Act is not to be so construed as to give the Mayor and City Council 'any control over said board or any officer or police, policeman or detective appointed thereby.' "

"It is plain, therefore, that the power of the City Government is confined to mere matter of regulation by proper ordinance as to the manner and extent of the deposit of building material in the streets, and the enforcement of the regulation is entirely dependent upon a separate and independent police department, over which the City has no control."

The ground upon which *Allvater's Case* and *Sinclair's Case* were decided adversely to the contention of the plaintiff was that under the Act of 1867, the duty of enforcing ordinances devolved upon the police department, and that the City could not be held liable for injury resulting from a failure of persons using the streets to comply with an ordinance which it has no power to enforce. But it is urged by the appellant in this case that the Act of 1898, Chapter 123, enlarges the powers of the Mayor and City Council of Baltimore, and that under its present charter (Act 1898, Ch.

123), as construed by the more recent decisions, the City is liable for injuries resulting from a failure to enforce its ordinances. A comparison of the provisions of the present charter with the law as it previously existed, affords, however, but little support for this contention. The law as it stood prior to the Act of 1898 provided: "The Mayor and City Council may pass ordinances for preserving order, securing property and persons from violence, danger or destruction, protecting the public and City property, rights and privileges, from waste or encroachment, and for promoting the great interests and insuring the good government of the City; but no ordinance heretofore passed, or that shall hereafter be passed by the Mayor and City Council of Baltimore, shall hereafter conflict or interfere with the powers or the exercise of the powers of the Board of Police of the City of Baltimore, hereinafter created; nor shall the said City, or any officer or agent of the corporation of said City, or of the Mayor thereof, in any manner impede, obstruct, hinder or interfere with the said board of police, or any officer or servant thereof or thereunder." Code of Public Local Laws (1888), Art. 4, sec. 721. Section 725 required the police commissioners "to enforce all laws and ordinances of the Mayor and City Council of Baltimore not inconsistent with the provisions of this sub-title of this article." And section 740 declared that "nothing in this sub-title of this article shall be so construed as to destroy or diminish the liability or responsibility of the Mayor and City Council of Baltimore for any failure to discharge the duties and obligations of said Mayor and City Council or any of them, or give the said Mayor and City Council any control over said board or any officer of police, policeman or detective appointed thereby."

The Act of 1898 confers upon the Mayor and City Council of Baltimore power "to pass ordinances for preserving order, and securing property and persons from violence, danger and destruction, protecting the public and City property, rights and privileges from waste or encroachment, and

for promoting the great interests and insuring the good
government of the City. To have and exercise within the
limits of the City of Baltimore all the powers commonly
known as the police power to the same extent as the State
has or could exercise said power within said limits. But no
ordinance heretofore passed, or that shall hereafter be passed
by the Mayor and City Council of Baltimore, shall hereafter
conflict or interfere with the powers or exercise of the powers
of the Board of Police of the City of Baltimore, heretofore
created, nor shall the City, or any officer or agent of the City,
or the Mayor thereof, in any manner impede, obstruct,
hinder or interfere with the said Board of Police, or any
officer, agent or servant thereof or thereunder. Section 744
of the present charter (Balto. City Code, 1906) also pro-
vides that the Board of Police Commissioners shall "prevent
and remove nuisances in all the streets and highways," and
"enforce all laws, ordinances of the Mayor and City Council
of Baltimore not inconsistent with the provisions of this sub-
division of this article, or any law of the State which may be
properly enforceable by a police force," and section 759, like
section 740 of the Code of Public Local Laws of 1888, de-
clares that, "Nothing in this sub-division of this article shall
be so construed as to destroy or diminish the liability or
responsibility of the Mayor and City Council of Baltimore
for any failure to discharge the duties and obligations of
said Mayor and City Council of Baltimore, or any of them,
or give the said Mayor and City Council of Baltimore any
control over said board, or any officer of police, policeman or
detective appointed thereby."

It is apparent from this comparison of the laws in force
prior to the Act of 1898 with the provisions of that act that
there has been no change that can justify a different conclu-
sion in this case from that reached in *Altvater* v. *Baltimore*
and *Sinclair* v. *Baltimore.*

It is still the duty of the police department to prevent and
remove nuisances in the streets, and to enforce all laws,
and ordinances of the city, and in the discharge of that duty

the Board of Police Commissioners are not subject to the control of the Mayor and City Council of Baltimore.

It appears from the ordinances offered in evidence and found in the record, that the Mayor and City Council of Baltimore, on the 18th of November, 1884, passed an ordinance providing that "Wherever any piles of bricks, stones, lumber or other building material shall be left in any of the streets, lanes or alleys of the City, they shall during the night be designated by displaying a lighted lamp or lantern at such part of the same, as to be easily observed by persons passing along the street, and any person or persons or body corporate who may violate any of the provisions of this section, shall forfeit and pay a fine of not less than $5 nor more than $10, for each and every offense."

As said in *Sinclair's Case,* the City "has no means at its command to enforce this ordinance, and it would, therefore, be unjust to hold it liable for injuries resulting from a failure to enforce" it.

The cases of *Baltimore City* v. *Beck,* 96 Md. 183; *Baltimore City* v. *Walker,* 98 Md. 637, and *McCarthy* v. *Clark,* 115 Md. 454, relied on by counsel for the appellant, differ very materially from the cases to which we have referred and the case at bar. In *Beck's Case,* the negligence complained of as the cause of the injury was the failure of the City "to properly light Fulton Avenue, one of the public highways of the city." In *Walker's Case* the injury sustained was caused by the negligence of the City in placing on the sidewalk a water pipe extending three or four inches above the footway, and in *McCarthy's Case* the obstruction on the sidewalk which caused the accident was placed there by "contractors engaged in the work under employment by the City." In these cases, and in the earlier case of *Baltimore* v. *O'Donnell,* 53 Md. 110, the liability of the City was based on the negligent conduct of *its employees,* or its failure to perform a duty imposed upon it. In the case at bar the negligence alleged is the failure of the City to enforce an ordinance which *it had no power to enforce.*

We have carefully examined the other cases referred to by counsel for the appellant, but do not find in them sufficient authority for a reversal of the judgment in this case.

*Judgment affirmed, with costs.*