## SARAH GREEN *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 71, October Term, 1942.]

*Decided February 9, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*David J. Markoff* and *Michael J. Manley* for the appellant.

*Morris A. Baker, Assistant City Solicitor,* with whom was *F. Murray Benson, City Solicitor of Baltimore,* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The plaintiff, Sarah Green, was a guest passenger in an automobile owned and driven by her son-in-law, Harry Pasenker, and was injured when it collided with a pylon located on North Avenue, near its intersection with Dukeland Street, about 6 o'clock on the evening of November 19, 1938. There have been two trials of the case, at the first the judgment was in favor of the plaintiff. A new trial was granted on the ground that there should have been a verdict directed for the defense. At the second trial the case was submitted on the evidence taken at the first trial, and a verdict instructed for the defendant. From the judgment thereon the plaintiff appeals.

The instructions, granted at the request of the defendant, were: No legally sufficient evidence. B. "That the safety pylon, including the lights thereon, is operated and maintained solely by the Police Department, and, further, that the City had no actual or constructive notice that the light or lights had not been turned on the pylon just prior to the accident." C. That the defendant had no legally sufficient notice "either actual or constructive, that the lights on the safety pylon in question were out or in a defective condition in time to have repaired the same prior to the happening of the accident." D. That the City "is not responsible for the negligence of the Police Department or any of its mem-

bers, it and they not being agents of the Mayor and City Council of Baltimore."

The plaintiff's contentions are: (1) that there is legally sufficient evidence of negligence on the part of the City, and (2) that the City is not relieved of responsibility "because it had delegated to the Police Department of Baltimore City the duty of turning on and off the lights on the pylon at the safety zone."

The plaintiff's first contention is really included in the second, which goes to the question of the authority, if any, of the Mayor and City Council over or aside from the police.

The Act of 1867, Chap. 367, took the Police Department out of the hands of the City and put in in the control of the State. By Section 899 of the City Charter (1938 Ed.); Public Local Laws (1930), Art. 4, Sec. 747, it is the duty of the Police Commissioner, who is appointed by the Governor, "to estimate annually what sum of money will be necessary for each current fiscal year to enable him to discharge the duty imposed on him, and he shall forthwith certify the same to the Mayor and City Council of Baltimore, who are required without delay, specifically to assess and levy such amount as shall be sufficient to raise the same clear of all expenses and discounts upon all the assessable property in the City of Baltimore, and cause the same to be collected as all other city taxes"; and, if the amount so estimated shall prove insufficient, he may issue certificates of indebtedness against the city to make up the deficiency not to exceed fifty thousand dollars in any one year.

The power to pass ordinances and make traffic regulations is in the Mayor and City Council, but the enforcement of them is the duty of the police. *State v. Stewart,* 152 Md. 419, 137 A. 39. As said in *Altvater v. Baltimore,* 31 Md. 462, 466, the first case to come to this court after the adoption of the Act of 1867, "Whilst it is the duty of the Mayor and City Council of Baltimore, to pass all proper ordinances authorized by their charter in

regard 'to the prevention and removal of nuisances,' * * * they are deprived of the power of enforcing them." See also *Sinclair v. Baltimore,* 59 Md. 592; *Taxicab Co. v. City of Baltimore,* 118 Md. 359, 84 A. 548. The city cannot be held responsible unless it produced the condition in the streets resulting in injury. *Gutowski v. Baltimore,* 127 Md. 502, 96 A. 630.

The evidence on the part of the plaintiff is that about 6 o'clock in the evening the car, in which she was a passenger, ran into an unlighted pylon. "It was raining and dark and foggy, and she couldn't see, and she didn't know what happened when the automobile reached Dukeland Street, except that it hit the safety light there, which she said was not burning." Carvel Cox, a witness for plaintiff, said he lived on the north side of North Avenue, directly across the street from the safety zone. He had arrived home from his work about twenty minutes of six, it was raining hard and was foggy; he parked his car on the north side of North Avenue about 100 feet east of the eastern end of the safety zone. "It was dark. You couldn't see in front of you." "There is a street light there about thirty-five feet, right catercorner from the safety zone, on the north side of North Avenue, and there is a light right on top of the safety zone, with a shade that points the light all the way down, but the light on the safety zone was not burning, and the street light was out. All the other street lights were burning." When he heard the crash, he rushed out and helped the occupants of the car into Dr. Helm's office, which was nearby. "The light was not on then, and it was not switched on until the police car got there; when the radio car arrived, one of the police officers got out and he turned the lights on; they have a box on the other side where the lights are turned on. * * * The lights went on all right when the man from the radio car went over to the box and turned the switch." All other lights in the neighborhood were on. He said the accident happened between 6.10 and 6.15.

One of the officers testified that these lights were controlled by a switch, on the light pole, enclosed in a metal box to which every policeman had a key. The evidence is that the safety zones, protected by lighted pylons, are wired and serviced by the electrical division of the Police Department. All burned out or defective bulbs are replaced by the police. The city and the railway company construct the pylons and provide the safety zones, and thereafter they are in the charge of the Police Department. We cannot say that they are an unreasonable provision for the safety of thousands of persons who use the street cars. These safety zones are for their protection. The pylons are for their protection also, and so substantially constructed as to prevent motor vehicles from running into them. Of course, the pylons should be lighted, but they are never intentionally, and rarely negligently, unlighted. They are obstructions in the streets, intentionally erected by the city (compare *Gutowski v. Baltimore, supra*), but their purpose is to promote, not hinder, the public safety. If we were to yield to the plaintiff's contention it would be to declare these safety zones, protected by pylons to be nuisances *per se*, but we are unwilling to do this. The damage such a decision would do would far outweigh the benefits or advantages to the users of motor vehicles. If there is negligence in this case (and it is not necessary to say there was any) it would be the negligence of the police. As the Police Department is an agency of the State, and not of the city, the effect of any action against it would be against the State, and the State is not suable. This conclusion agrees with the trial court, and the judgment will be affirmed.

*Judgment affirmed, with costs.*