541 A.2d 1303

**Isaac CLEA et al.**

v.

**The MAYOR AND CITY COUNCIL OF BALTIMORE et al.**

**No. 76, Sept. Term, 1986.**

Court of Appeals of Maryland.

June 9, 1988.

Gary S. Bernstein (Joseph F. Zauner III and Rocklin & Settleman, P.A., on the brief), Baltimore, for appellants.

Robert C. Verderaine (Verderaine & DuBois, P.A., on the brief), Baltimore, for appellee Robert E. Leonard.

Benjamin L. Brown, City Sol. and Millard S. Rubenstein, Asst. Sol., on the brief, Baltimore, for appellees Mayor and City Council of Baltimore City, Baltimore City Police Dept. and Bishop L. Robinson, Police Com'r.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE and ADKINS, JJ.

ELDRIDGE, Judge.

This is a tort action based upon an unlawful search of the plaintiffs' home by an officer of the Baltimore City Police Department. The questions before us relate to whether Baltimore City and the Police Department are vicariously liable for the police officer's conduct, and whether the officer is entitled to public official immunity under the circumstances.

## I.

On January 30, 1985, Police Officer Robert Leonard, along with at least seven other armed police officers, forcibly entered the home of the Isaac Clea family and conducted a search of the entire premises pursuant to a search

---

* COUCH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

warrant. Officer Leonard had intended to obtain a warrant to search the residence of Alvin Thomas for narcotics. Officer Leonard's affidavit in support of his application for a warrant, and consequently the warrant itself, stated that Mr. Thomas resided at 2428 East *Chase* Street in Baltimore City. Actually, however, Thomas resided at 2428 East *Eager* Street in Baltimore City. The Clea residence was 2428 East Chase Street. Chase and Eager Streets are parallel to each other, one block apart.

Officer Leonard's affidavit in support of the search warrant also contained a description of the Thomas residence. The Thomas house was described as a two-story row house, with a white crossbuck storm door, a lamp post in the front yard, and no house numbers. The affidavit stated that Mr. Thomas lived in the basement of the house which his aunt, Ethel Dorman, an elderly woman approximately 96 years of age, rented. The Clea residence did not entirely match the house described in the affidavit. It did not have a lamp post in front; whether it had house numbers is not clear. Furthermore, Officer Leonard did not limit his search to the basement area of the house; instead, he searched the entire premises. No narcotics or other contraband were found. It is uncontested that Officer Leonard searched the wrong house.

Mr. Clea, his wife Mattie Mae Clea, their daughter Marion Willene, son Mathew Wayne, and granddaughter Chantel Lorraine, brought this action in the Circuit Court for Baltimore City to recover for damages allegedly sustained as a result of the wrongful search. The complaint contained counts based on invasion of privacy, defamation, negligence, and violations of Articles 24 and 26 of the Maryland Declaration of Rights. Named as defendants were the Mayor and City Council of Baltimore, the Baltimore City Police Department, the Police Commissioner of Baltimore City, and Officer Leonard.

The defendants Mayor and City Council, Police Department and Police Commissioner, filed a motion to dismiss, asserting various grounds including immunity. The defend-

ant Leonard moved for summary judgment, claiming that he was entitled to a qualified immunity, based upon the absence of malice. Attached to the motion was an affidavit of Officer Leonard. The plaintiffs opposed the motion, submitting an affidavit by Mattie Mae Clea. After a hearing and consideration of each side's affidavits, the circuit court granted the defendants' motions and entered a judgment for costs in favor of all defendants.

The plaintiffs then appealed to the Court of Special Appeals, and, before the case was heard by that court, we issued a writ of certiorari.

## II.

We shall first deal with the plaintiffs' assertion of liability on the part of the Mayor and City Council of Baltimore, the Police Department, and the Police Commissioner.

The plaintiffs' action against the defendants other than Officer Leonard has been premised entirely on the theory that the Baltimore City Police Department is, for tort liability purposes, an agency of the Mayor and City Council of Baltimore. The Department, the Commissioner, and the Mayor and City Council have all been regarded as local government entities employing Officer Leonard.

Moreover, the plaintiffs have not suggested that the Mayor and City Council, the Police Department, or the Police Commissioner were involved or connected in any way with, or cognizant of, the alleged wrongful conduct.[1] Instead, the plaintiffs seek to hold the City, the Department, and the Commissioner vicariously liable for Officer Leonard's conduct. The plaintiffs' position is that the City of

---

1. *Contrast, e.g., Mason v. Wrightson,* 205 Md. 481, 484–485, 109 A.2d 128 (1954) (unlawful search pursuant to a "general order" by the Police Commissioner of Baltimore City); *Weyler v. Gibson,* 110 Md. 636, 654–655, 73 A. 261 (1909) (state official involved in carrying out unconstitutional state activity). *See Dunne v. State,* 162 Md. 274, 288, 159 A. 751, *appeal dismissed,* 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932). *See also Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978).

Baltimore and its agencies, the Police Department and the Commissioner, together constitute an employer liable under the doctrine of respondeat superior. The plaintiffs rely upon a case dealing with the liability of Prince George's County for the tortious conduct of officers in the Prince George's County Police Department. *See Bradshaw v. Prince George's County*, 284 Md. 294, 396 A.2d 255 (1979). *See*, in addition, *Cox v. Prince George's County*, 296 Md. 162, 460 A.2d 1038 (1983); *James v. Prince George's County*, 288 Md. 315, 418 A.2d 1173 (1980).[2]

■ One difficulty with the plaintiffs' position, with regard to the counts in their complaint not based on alleged constitutional violations, is that Baltimore City and its departments are entitled to a degree of immunity in tort suits. Prince George's County, at the time of the *Cox, James,* and *Bradshaw* cases, had waived its immunity for tort actions. Baltimore City, however, has not waived its tort immunity. Consequently, as to many types of ordinary tort actions, including those sounding in negligence, Baltimore City is immune with regard to matters classified as "governmental" and not immune with regard to matters classified as "proprietary." *See, e.g., Tadjer v. Montgomery County*, 300 Md. 539, 546–551, 479 A.2d 1321 (1984); *Austin v. City of Baltimore*, 286 Md. 51, 405 A.2d 255 (1979), and cases there cited.[3] Police activity, of the type giving rise to the

---

**2.** Furthermore, the plaintiffs in their brief perceive that the respondeat superior liability of Baltimore City, the Police Department, and the Commissioner, turns upon the single factor of whether Officer Leonard is entitled to immunity as a public official exercising a discretionary function. Relying upon one aspect of the *Bradshaw* opinion, the plaintiffs state that, if Leonard has immunity, then the employer-defendants are not liable. The plaintiffs then assert that the "converse must also be true" (appellant's brief p. 13), namely that if Leonard is not entitled to public official immunity, then the employer-defendants are automatically liable. The plaintiffs overlook the fact that the portion of the *Bradshaw* opinion on which they rely was later overruled in *James v. Prince George's County, supra.*

**3.** The governmental-proprietary distinction has not been applied, however, when local governments have been sued for violations of consti-

instant case, has been classified as governmental and not proprietary. *See Cox v. Prince George's County, supra,* 296 Md. at 166–167, 460 A.2d 1038; *Wynkoop v. Hagerstown,* 159 Md. 194, 150 A. 447 (1930).

The plaintiffs, treating the case as if Baltimore City had waived tort immunity, and as if *Bradshaw v. Prince George's County, supra,* controlled the liability of Baltimore City and its agencies for Officer Leonard's torts, have not focussed upon whether, under applicable principles of Maryland law, a municipality or county which has not waived immunity would be vicariously liable for tortious conduct like that alleged in this case.

A more fundamental obstacle, however, to the plaintiffs' theory of recovery against the Mayor and City Council of Baltimore, the Police Department, and the Police Commissioner, concerns the status of the Baltimore City Police Department for purposes of tort liability.

■ By Ch. 367 of the Acts of 1867, the General Assembly of Maryland made the Police Department of Baltimore City a state agency; its officials and officers were designated as state officers. Since that time, this Court has consistently held that Baltimore City should not be regarded as the employer of members of the Baltimore City Police Department for purposes of tort liability. Unlike other municipal or county police departments which are agencies of the municipality or county (*see, e.g., Cox v. Prince George's County, supra,* 296 Md. at 165–170, 460 A.2d 1038), the Baltimore City Police Department is a state agency. Thus, as a matter of Maryland law, no liability ordinarily attaches to Baltimore City under the doctrine of respondeat superior for the torts of Baltimore City police officers acting within the scope of their employment. *See, e.g., Green v. Balti-*

---

tutional rights. In that situation, there is ordinarily no local governmental immunity. *See, e.g., Hebron Sav. Bk. v. City of Salisbury,* 259 Md. 294, 269 A.2d 597 (1970); *Jarvis v. Baltimore City,* 248 Md. 528, 534–535, 237 A.2d 446 (1968); *Burns v. Midland,* 247 Md. 548, 234 A.2d 162 (1967).

*more*, 181 Md. 372, 30 A.2d 261 (1943); *Taxicab Co. v. M. & C.C. of Baltimore*, 118 Md. 359, 84 A. 548 (1912); *Sinclair v. Baltimore*, 59 Md. 592 (1883); *Altvater v. the Mayor and City Council of Baltimore*, 31 Md. 462 (1869). *See also Austin v. City of Baltimore, supra*, 286 Md. at 75–76, 405 A.2d 255 (concurring and dissenting opinion); *Kaufman v. Taxicab Bureau*, 236 Md. 476, 479–480, 204 A.2d 521 (1964), *cert. denied*, 382 U.S. 849, 86 S.Ct. 95, 15 L.Ed.2d 88 (1965); *Hector v. Weglein*, 558 F.Supp. 194, 197–199 (D.Md.1982).

■ It is true that, by Ch. 920 of the Acts of 1976, the General Assembly transferred the power to appoint the Baltimore City Police Commissioner from the Governor to the Mayor of Baltimore City. At the same time, however, the General Assembly maintained the express designation of the Baltimore City Police Department as a *state* rather than a local government agency. *See* § 16–2(a) of the Code of Public Local Laws of Baltimore City (1980, 1985 Supp.), being § 16–2(a) of Article 4 of the Code of Public Local Laws of Maryland.[4] Furthermore, the General Assembly, and not the Baltimore City Council, has continued to be the legislative body enacting significant legislation governing the Baltimore City Police Department. *See, e.g.*, Ch. 265 of the Acts of 1982.

■ In light of the cases in this Court holding that the Baltimore City Police Department is a state agency for purposes of respondeat superior liability, and the General Assembly's continued adherence to the Department's classification as a state agency, it is clear that the Mayor and City Council of Baltimore would not be liable for Officer Leonard's alleged tortious conduct. As a matter of Maryland law, Baltimore City was simply not Officer Leonard's

---

4. Even absent such an express designation by the Legislature, the fact that the head of an agency may be appointed by a local government executive rather than the Governor, while a factor to be considered, is not itself determinative of the agency's status as a state or local government entity. *See, e.g., Md.–Nat'l Cap. P. & P. Comm'n v. Kranz*, 308 Md. 618, 521 A.2d 729 (1987); *O & B, Inc. v. Md.–Nat'l Cap. P. & P.*, 279 Md. 459, 369 A.2d 553 (1977).

employer for tort liability purposes.[5]  Apart from any other
issues, Baltimore City was entitled to a judgment for this
reason.  On this ground, we shall affirm the judgment in
favor of the Mayor and City Council of Baltimore.

■  Moreover, in determining whether the Baltimore
City Police Department and its Commissioner might be
liable, under the doctrine of respondeat superior, for Officer
Leonard's tortious conduct, the principles governing the
liability of *state* agencies would be controlling.  The State
of Maryland (which was not named as a defendant) is, of
course, generally immune from tort liability unless that
immunity has been waived.  *See, e.g., Md.-Nat'l Cap. P. &
P. Comm'n v. Kranz,* 308 Md. 618, 622, 521 A.2d 729 (1987),
and cases there cited.  *See also State v. Hogg,* 311 Md. 446,
458–465, 535 A.2d 923 (1988).  In ordinary tort actions for
damages, state agencies are also shielded by the State's
sovereign immunity unless that immunity has been waived.
*Md.-Nat'l Cap. P. & P. Comm'n v. Kranz, supra,* 308 Md.
at 622, 521 A.2d 729.  With regard to the liability or
non-liability of state agencies or the heads of state agencies
for constitutional violations, *see, e.g., Dep't of Natural*

---

5.  We are aware, of course, that the General Assembly's designation of
the Baltimore City Police Department as a state agency would not be
controlling for all purposes.  For example, with regard to federal law
liability under 42 U.S.C. § 1983, the state law classification of the
Baltimore City Police Department would not be decisive, and the
Baltimore City Police Department might well be regarded as a local
government agency.  *See Hector v. Weglein,* 558 F.Supp. 194, 197–199
(D.Md.1982).

  The plaintiffs' theories of recovery in the present case, however, are
based entirely upon Maryland law.  The plaintiffs did not include a
count under 42 U.S.C. § 1983, and they have not in any manner relied
on the Fourth Amendment or otherwise on federal law.

  Moreover, if the plaintiffs had included a count under 42 U.S.C.
§ 1983, it would not have availed them in imposing liability on
Baltimore City, the Police Department, or the Police Commissioner.
As the Supreme Court emphasized in *Monell v. New York City Dept. of
Social Services, supra,* 436 U.S. at 691, 98 S.Ct. at 2036, "a municipality
cannot be held liable under § 1983 on a *respondeat superior* theory."
Liability under § 1983 cannot be imposed on a municipality "unless
action pursuant to official municipal policy of some nature caused a
constitutional tort."  *Ibid.*

*Resources v. Welsh,* 308 Md. 54, 60–65, 521 A.2d 313 (1986), and cases there discussed; *Walker v. Acting Director,* 284 Md. 357, 364, 396 A.2d 262 (1979); *Davis v. State,* 183 Md. 385, 388–393, 37 A.2d 880 (1944); *Dunne v. State,* 162 Md. 274, 288, 159 A. 751, *appeal dismissed,* 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932); *Weyler v. Gibson,* 110 Md. 636, 73 A. 261 (1909). Finally, in the Maryland Tort Claims Act, first adopted by Ch. 298 of the Acts of 1981, the General Assembly has waived the State's immunity in tort actions subject to specified exclusions and limitations. *See* Maryland Code (1984, 1987 Cum.Supp.), §§ 12–101 through 12–110 of the State Government Article.[6]

None of the matters outlined above has been argued, raised, or even mentioned by the plaintiffs at any stage of this litigation. The issue of the Police Department's and the Commissioner's liability or non-liability, *as state agencies,* for Officer Leonard's conduct has never been raised in this case. The pertinent principles, considerations, and authorities have been entirely overlooked. Absent any briefing or argument whatsoever concerning the issue, we decline to decide it. *See, e.g., State v. Rivenbark,* 311 Md. 147, 160, 533 A.2d 271 (1987); *Foster, Evans and Huffington v. State,* 305 Md. 306, 315, 503 A.2d 1326, *cert. denied,* 478 U.S. 1010, 1023, 106 S.Ct. 3310, 3315, 92 L.Ed.2d 722,

---

**6.** The coverage of the Maryland Tort Claims Act was broadened considerably by Ch. 538 of the Acts of 1985, effective July 1, 1985. Whether or not the type of actions complained of in this case, by an officer of the Baltimore City Police Department, would be encompassed by the Tort Claims Act if the actions had occurred on or after July 1, 1985, is a matter as to which we intimate no opinion. Nevertheless, it would appear that the statute, as worded prior to July 1, 1985, would not encompass conduct such as involved in the case at bar.

In addition, under a provision in the Tort Claims Act, § 12–105(a) of the State Government Article (1987 Cum.Supp.), state personnel, acting within the scope of their employment, and without malice or gross negligence, are granted immunity for acts with respect to which the State or its units have waived immunity in the Act. In light of the coverage of the Tort Claims Act at the time of the alleged unlawful search (January 30, 1985), this immunity provision would not seem to benefit Officer Leonard in the present case.

723, 745 (1986), and cases there cited. For this reason, we shall not disturb the judgment in favor of the Police Department and the Commissioner.

## III.

Next, we shall address the non-constitutional tort counts against Officer Leonard. These are negligence, defamation, and invasion of privacy counts, as to which the plaintiffs have not claimed a violation of their constitutional rights.

In Maryland, a limited category of governmental personnel, including police officers, are entitled under certain circumstances to qualified immunity from tort liability for their negligent conduct. The principle was recently delineated for this Court by Judge J. Dudley Digges in *James v. Prince George's County, supra,* 288 Md. at 323–324, 418 A.2d 1173, as follows (emphasis in original):

"Before a governmental representative in this State is relieved of liability for his negligent acts, it must be determined that the following independent factors *simultaneously* exist: (1) the individual actor, whose alleged negligent conduct is at issue, is a *public official* rather than a mere *government employee or agent;* and (2) his tortious conduct occurred while he was performing *discretionary,* as opposed to *ministerial,* acts in furtherance of his official duties. *E.g., Duncan v. Koustenis,* 260 Md. 98, 104, 271 A.2d 547, 550 (1970); *State, Use, Clark v. Ferling,* 220 Md. 109, 113–14, 151 A.2d 137, 139–40 (1959); *Cocking v. Wade,* 87 Md. 529, 541, 40 A. 104, 106 (1898); *Macy v. Heverin,* 44 Md.App. 358, 361, 408 A.2d 1067, 1069 (1979); *accord, Schoonfield v. Mayor & City Council of Baltimore,* 399 F.Supp. 1068, 1088 (D.Md.1975), *aff'd,* 544 F.2d 515 (4th Cir.1976); 2 F. Harper & F. James, *The Law of Torts* § 29.10, at 1638–39 (1956); W. Prosser, *Handbook of the Law of Torts* § 132, at 988–90 (4th ed. 1971); *Restatement (Second) of Torts* § 895D (1979); Bermann, *Integrating Governmental and Officer Tort Liability,* 77 Col.L.Rev. 1175, 1178–79

(1977). Once it is established that the individual is a public official *and* the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability. *See, e.g., Bradshaw v. Prince George's County, supra,* 284 Md. at 302–04, 396 A.2d at 260–61; *Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 346–47, 278 A.2d 71, 74 (1971). The rationale underlying this grant of immunity 'is that a public purpose is served by protecting officials when the act is an exercise of their discretion.' *Bradshaw v. Prince George's County, supra,* 284 Md. at 304, 396 A.2d at 261."

*See,* in addition, *Ashburn v. Anne Arundel County,* 306 Md. 617, 621–622, 510 A.2d 1078 (1986); *Cox v. Prince George's County, supra,* 296 Md. at 169, 460 A.2d 1038 ("a police officer does not enjoy this immunity if he commits an intentional tort or acts with malice").

It is undisputed in this case that Officer Leonard was a public official and that his tortious conduct occurred while he was performing discretionary acts in furtherance of his official duties. It is further conceded by the plaintiffs that the non-constitutional torts here alleged are all ones falling within the scope of the immunity if Officer Leonard acted without malice. The plaintiffs' contention regarding these non-constitutional counts is that there was a triable issue as to whether Officer Leonard acted with malice. Thus, accepting the plaintiffs' concessions, the only question before us on this branch of the case is whether the trial court erred in concluding that, in light of the affidavits of Officer Leonard and Mattie Mae Clea, there was no showing of malice.

Officer Leonard's affidavit, in support of his motion for summary judgment, stated that the estranged wife of Alvin Thomas had given him the address of 2428 E. Chase Street. Officer Leonard's affidavit, in pertinent part, was as follows:

"5. Emma Thomas also reported to the affiant that Alvin Thomas was dealing in drugs and gave to Officer Olin Barber a cellophane bag containing a white powder and that there was contained in a black suit of Alvin Thomas located in the basement where her husband was living, similar cellophane bags containing white powder. The address given to your affiant of Alvin Thomas was 2428 E. Chase Street, that he lived in the basement at that address, and that he was living with his aunt, described as Ethel Dorman, and further described as an elderly woman, approximately 96 years of age.

"6. The affiant personally went to the scene of 2428 E. Chase Street to observe its characteristics and noticed that it was a two-story row home with a white crossbuck door on the front.

"7. The affiant then met with Emma Thomas at the police station in order to prepare an affidavit for a search and seizure warrant of 2428 E. Chase Street. He gave the description of the home as he had personally observed it to Emma Thomas and she acknowledged that the information given, namely a two-story row home with a white crossbuck front door met the description of the premises where her husband was residing. Your affiant also inquired of Emma Thomas of any other occupants of that location to which she replied, that the aforementioned elderly woman would be on the premises.

"8. The affiant also obtained from Emma Thomas a description of her husband, Alvin Thomas, in order to include that information in the affidavit. The affidavit was prepared and shown to Emma Thomas and read by her. She was then taken to the Honorable James Bundy, District Court of Maryland for Baltimore City, where Emma Thomas acknowledged that the information contained in the affidavit was true and correct. The affidavit contained the address of 2428 E. Chase Street. That premises then became the subject of execution of the search and seizure warrant.

"9. At all times, your affiant acted and relied upon the information contained in this affidavit, had no personal motive or other reason to conduct the search and seizure of the premises of plaintiffs, other than in the performance of his duties as a police officer for the Baltimore City Police Department. He had had no contact previously with the plaintiffs and harbored no illwill toward them."

In his earlier affidavit accompanying his application for a search warrant, Officer Leonard had also stated that he was informed that Thomas's residence at 2428 E. Chase Street had a lamp post in front of the house.

The affidavit of Mattie Mae Clea, which was the only document relied upon in the plaintiffs' response to Officer Leonard's motion for summary judgment, was in its entirety as follows:

"MATTIE MAE CLEA, one of the Plaintiffs in the above-captioned case, first being duly sworn, says:

"1. That she is an adult citizen of the State of Maryland, is competent to be a witness, and that the facts submitted in this Affidavit are based upon her personal knowledge.

"2. That she is and was at the time of the incident described in the Complaint an owner and occupant of the property known as 2428 East Chase Street in Baltimore City, Maryland.

"3. That no one has ever rented the property from her and her husband, and that she does not know of any persons named Ethel Dorman, or Alvin Thomas.

"4. That there is at the present time no lamp post in front of her house, nor has there ever been one there to her knowledge.

"5. That at the time of the search of her home, eight (8) or more armed police officers entered the premises, and searched every room in the house, including the main floor and the upstairs floor, as well as the basement. In the course of their search of upstairs rooms, the police officers entered the bedroom of Plaintiff Marion Willene

Clea, her daughter, while her daughter was asleep in the bed in that room."

Both in the trial court and in this Court, the plaintiffs' argument, that there was actual malice, has focussed on the absence of the lamp post from the Clea residence and the scope of the search. The plaintiffs seize upon the statement in Officer Leonard's affidavit supporting the search warrant application that he was informed that Thomas's residence at 2428 E. Chase Street had a lamp post in front, and upon the statement in Leonard's affidavit supporting the summary judgment motion that the officer "personally went to the scene of 2428 E. Chase Street to observe its characteristics...." The plaintiffs then point to the affidavit of Mattie Mae Clea, in which she stated that the Clea house at 2428 E. Chase Street had no lamp post in front. From this, the plaintiffs assert (appellants' brief p. 10): "The Officer had been given a descriptive fact, i.e. the existence of the lamp post right in front of the house, which he obviously could not have personally observed since it was not present." The plaintiffs then conclude (*ibid.*): "He knew at that time, in fact, that the information given to him by the informant Emma Thomas was not correct. Execution by the Police Officer, Defendant Robert Leonard, of a Search Warrant which was based on information he knew to be incorrect, constituted deliberate and intentional performance of an illegal act.... This clearly demonstrates 'malice' as defined in Maryland law...." The plaintiffs go on to argue that this conclusion is supported by the fact that the affidavit supporting the search warrant stated that Mr. Thomas lived in the basement of 2428 E. Chase Street, whereas Officer Leonard and the other officers searched the entire Clea house at 2428 E. Chase Street.

In our view, the conclusion drawn by the plaintiffs, from the absence of a lamp post and the area searched, is strained. According to Officer Leonard, the suspect's estranged wife gave him the Chase Street address. Except as to the absence of a lamp post, the Clea house essentially matched the house described by the informant. It is unreasonable to infer that Officer Leonard acted maliciously

simply because the house searched differed in one minor respect from the house intended to be searched.

The plaintiffs take the position that, whenever there is some minor discrepancy between the description given an officer of a place to be searched and the way that place actually appears, it is reasonable to infer that the officer must have observed the discrepancy, must have concluded that it was the wrong place, and deliberately decided to search the wrong place. In this situation, however, other inferences are far more reasonable. It is likely that the officer either failed to notice the single difference, or, if he noticed it, concluded that the informant's description was erroneous in one relatively minor detail concerning the lamp post.

As to the scope of the search, there is no suggestion that the house where Thomas resided was divided into apartments. Officer Leonard was informed that Thomas resided with his aunt, in her house. The basement presumably was the portion designated as his quarters or room. Merely because one's private area of a single family dwelling is the basement, does not mean that the person does not have access to the house generally.

Moreover, the plaintiffs have not suggested any possible reason or motive for Officer Leonard to have deliberately searched the Cleas' residence instead of Thomas's residence. Rather, the two affidavits of Officer Leonard show that an honest mistake was made, and nothing submitted by the plaintiffs creates a reasonable inference to the contrary.

■ We recognize that "disposition by summary judgment is generally inappropriate in cases involving motive or intent." *Di Grazia v. County Exec. for Mont. Co.*, 288 Md. 437, 445, 418 A.2d 1191 (1980). We further recognize that even where the facts are undisputed, if those facts are susceptible to inferences supporting the position of the party opposing summary judgment, then a grant of summary judgment is improper. *Di Grazia v. County Exec. for Mont. Co., supra,* 288 Md. at 445, 418 A.2d 1191; *Honaker v. W.C. & A.N. Miller Dev. Co.*, 285 Md. 216, 232, 401 A.2d

1013 (1979); *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090 (1979). Those inferences, however, must be *reasonable* ones. *Washington Homes v. Inter. Land Dev.,* 281 Md. 712, 718, 382 A.2d 555 (1978); *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 136, 265 A.2d 256 (1970); *Lawless, Adm'x v. Merrick,* 227 Md. 65, 72, 175 A.2d 27 (1961). What was said by the United States Court of Appeals for the Fifth Circuit in *Tyler v. Vickery,* 517 F.2d 1089, 1094 (5th Cir.1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976), is fully applicable to the instant case:

> "In opposing a motion for summary judgment, a party is entitled not only to have the facts viewed in the light most favorable to it but also to all reasonable inferences which may be drawn from these facts. *Harvey v. Great Atlantic & Pacific Tea Co.,* 5 Cir.1968, 388 F.2d 123, 124–25; *Liberty Leasing Co. v. Hillsum Sales Corp.,* 5 Cir.1967, 380 F.2d 1013, 1014–15. The inferences the non-moving party seeks to draw, however, must be 'reasonable,' and it is in this respect that we find [appellants' theory] insufficient to controvert appellees' properly supported motion for summary judgment."

In a like vein, Professor Wright has observed (C. Wright, *The Law of Federal Courts* § 99, at 666–667 (1983)):

> "It is frequently said that summary judgment should not be granted if there is the 'slightest doubt' as to the facts. Such statements are a rather misleading gloss on a rule that speaks in terms of 'genuine issue as to any material fact,' and would, if taken literally, mean that there could hardly ever be a summary judgment, for at least a slight doubt can be developed as to practically all things human. A better formulation would be that the party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists."

*See also Griffin v. Griffin,* 327 U.S. 220, 236, 66 S.Ct. 556, 564, 90 L.Ed. 635 (1946) ("unsupported suspicions" not sufficient to defeat summary judgment).

■ Considering all of the circumstances of this case, we do not believe that the inference of malice, which the plaintiffs attempt to draw, is reasonable. The undisputed facts before the trial judge, and all of the reasonable inferences, showed that Officer Leonard did not knowingly or deliberately search the wrong house. The mistake may have been the product of negligence. It was clearly a violation of the Cleas' constitutional rights. Nonetheless, on the record before her at the time, the trial judge was warranted in concluding that the mistake was not malicious. We shall, therefore, affirm the summary judgment in favor of Officer Leonard on the non-constitutional counts.

## IV.

■ Finally, we turn to those counts against Officer Leonard alleging violations of Articles 24 and 26 of the Maryland Declaration of Rights.

In *Widgeon v. Eastern Shore Hospital Center*, 300 Md. 520, 479 A.2d 921 (1984), this Court, responding to a certified question from the United States District Court for the District of Maryland, pointed out that a common law tort action for damages exists to remedy violations of Article 24 and Article 26 of the Maryland Declaration of Rights.[7] The issue contested by the parties in the present case is whether a public official should be entitled to qualified immunity when such an action is brought.

In oral argument before us, Officer Leonard conceded that the qualified immunity for public officials acting in a discretionary capacity, generally based upon the presence or absence of actual malice, has not heretofore been applied by this Court to violations of constitutional rights. Officer

---

7. In addition to the authorities cited in *Widgeon*, other cases and statutory provisions recognizing a cause of action for violations of Articles 24 and/or 26 include *Mason v. Wrightson*, 205 Md. 481, 109 A.2d 128 (1954); *Heinze v. Murphy*, 180 Md. 423, 24 A.2d 917 (1942); Maryland Code (1888), Art. 93, § 104.

Leonard further conceded that, if this qualified immunity were extended to cases involving violations of Maryland constitutional rights, then the individual whose rights are violated generally "has no remedy" and that invocation of the cause of action recognized in *Widgeon v. Eastern Shore Hospital Center, supra,* would "essentially" be "an exercise in futility." Nevertheless, Officer Leonard urges us to extend this qualified immunity to damage actions against public officials who violate Maryland constitutional rights. The plaintiffs obviously disagree with this position. Their view seems to be that, if any immunity is given to public officials violating rights under the Maryland Constitution, the standard should be the same as the "objective reasonableness" immunity test adopted by the Supreme Court for actions under 42 U.S.C. § 1983. See *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See also Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

A review of Maryland case law discloses that a public official who violates a plaintiff's rights under the Maryland Constitution is entitled to no immunity. The plaintiff may recover compensatory damages regardless of the presence or absence of malice. Punitive damages for the constitutional violation, however, are not recoverable absent a showing of actual malice. In our view, there are sound reasons underlying the position taken by the prior decisions of the Court. We are not persuaded that Maryland law on this subject should be modified by this Court.

The matter of a public official's immunity from damages for a constitutional violation was apparently first ruled upon by the Court in *Weyler v. Gibson, supra,* 110 Md. 636, 73 A. 261. In that case, an enlargement of the Maryland Penitentiary encroached upon the plaintiffs' land, and the plaintiffs brought an action for damages against, among others, the Warden of the Maryland Penitentiary. With regard to the Warden's argument that he was entitled to the immunity of the State (110 Md. at 653, 73 A. 261), this Court responded as follows (*id.* at 653–654, 73 A. 261):

"JUDGE DILLON, in his work on the *Laws and Jurisprudence of Eng. & Am.*, 207, said: 'That all of the original States in their first Constitutions and Charters provided for the security of private property, as well as life and liberty. This they did either by adopting, in terms, the famous thirty-ninth article of Magna Charta which secures the people from arbitrary imprisonment and arbitrary spoliation, or by claiming for themselves, compendiously, all of the liberties and rights set forth in the great Charter.'

"Our Declaration of Rights (Article 19) declares that every man for any injury done to him in his person or his property ought to have remedy by the course of the law of the land, and (Article 23) [now Article 24] that no man ought to be deprived of his property, but by the judgment of his peers, or by the law of the land, and section 40, Article 3 of the Constitution prohibits the passing of any law authorizing private property to be taken for public use, without just compensation as agreed between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation."

After pointing out that the "immunity of the State from suit ... [is] firmly fixed in our law," this Court continued (*id.* at 654):

"But it would be strange indeed, in the face of the solemn constitutional guarantees, which place private property among the fundamental and indestructible rights of the citizen, if this principle could be extended and applied so as to preclude him from prosecuting an action ... against a State Official unjustly and wrongfully withholding property...."

Thus, the Court in *Weyler* flatly refused to extend the State's governmental immunity to a public official violating the plaintiffs' constitutional rights, including those under Article 24 of the Declaration of Rights.

A case involving a violation of Article 26 of the Declaration of Rights is *Mason v. Wrightson*, 205 Md. 481, 109

A.2d 128 (1954). The plaintiff in that case was David T. Mason, an attorney and later a distinguished judge of the Court of Special Appeals. In January 1953, because of the number of serious crimes in Baltimore City committed with deadly weapons, the Police Commissioner of Baltimore City issued a "general order" for police to search "all persons coming under police suspicion" for weapons. During January and February 1953, in the Police Department's Northwestern District where the defendant was a police officer, one hundred and twenty-nine taverns were entered by the police and the male patrons were " 'patted down' in a search for concealed weapons." 205 Md. at 485, 109 A.2d 128. This was pursuant to the Commissioner's order and a further order by the Captain of the Northwestern District. During one night in February 1953, the plaintiff Mason was at a table with friends in a tavern in the Northwestern District when the police entered and announced that the male patrons would be searched. When the defendant, Sergeant Wrightson, reached the plaintiff and told him to "stand up and be searched," the plaintiff "arose from his chair, but informed Sergeant Wrightson that he did not consent to be searched because there was no legal basis for the search." *Ibid.* The plaintiff "was then searched by Sergeant Wrightson without his consent." *Ibid.* The plaintiff brought an action for damages against Sergeant Wrightson, and the trial court granted judgment for the defendant. This Court, however, reversed and remanded for entry of a judgment in favor of the plaintiff. After quoting the language of Article 26 of the Maryland Declaration of Rights and pointing out that the search was unlawful, this Court, in an opinion by Chief Judge Brune, concluded (*Id.* at 487, 109 A.2d 128):

> "When a peace officer goes beyond the scope of the law he may become liable civilly and is not shielded by the immunity of the law.... The fact that the appellee was acting under orders of a superior officer does not relieve him of civil liability for his actions which are illegal and beyond the scope of duty."

Consequently, the police officer in *Mason* was granted no immunity despite the absence of malice and the officer's good faith in merely carrying out the orders of a superior.

*Heinze v. Murphy*, 180 Md. 423, 24 A.2d 917 (1942), was also an action for damages against a Baltimore City Police Officer. The plaintiff Murphy was arrested by Officer Heinze for disorderly conduct, although the officer had no warrant and lacked probable cause to make the arrest.[8] The trial court awarded the plaintiff both compensatory and punitive damages, and Officer Heinze appealed. This Court reversed the award of punitive damages because of the absence of malice but upheld an award of compensatory damages, saying (180 Md. at 429, 24 A.2d 917):

> "The generally accepted rule in reference to ... damages, when an officer, such as a policeman, is involved, is that: 'An officer who acts in good faith in making an arrest is absolved from punitive or exemplary damages, even though he is liable for compensatory damages. However, such damages may be allowed against an officer under circumstances upon which bad faith or malice may be attributed to him in making the arrest.' 22 *Am.Jur., False Imp.*, Sec. 133, p. 439 ...."

And later (*id.* at 433–434, 24 A.2d 917):

> "A trespass may be committed from a mistaken notion of power, and from an honest motive to accomplish some good end. But, while *the law tolerates no abuse of power*, yet, in morals and the eye of the law, there is a vast difference between ... a person acting mistakenly, from a worthy motive, and one committing the same act from a wanton and malicious spirit, and with a corrupt and wicked design. Hence, where damages beyond com-

---

8. An unlawful warrantless arrest is, of course, a violation of Article 26 of the Declaration of Rights. *Mulcahy v. State*, 221 Md. 413, 421, 158 A.2d 80 (1960). *See Gilmore v. State*, 263 Md. 268, 275–276, 283 A.2d 371 (1971), *vacated on other grounds*, 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763 (1972); *De Angelo v. State*, 199 Md. 48, 51, 85 A.2d 468 (1952); *Callahan v. State*, 163 Md. 298, 301, 162 A. 856 (1932).

pensation, to punish the party guilty of a wrongful act, are asked, the evidence must show wanton or malicious motive, and it must be actual and not constructive or implied." (Emphasis added).

The *Weyler, Mason,* and *Heinze* cases compel the rejection of Officer Leonard's argument that a public official, guilty of violating a plaintiff's rights under the Maryland Constitution, should be entitled to a qualified immunity from compensatory damages based upon the absence of malice. These cases make it clear that an official who violates an individual's rights under the Maryland Constitution is not entitled to any immunity, and that the presence or absence of malice is pertinent only to the question of punitive damages. In addition, none of the other Maryland or English authorities recognizing a cause of action for damages to remedy violations of constitutional rights, and reviewed in *Widgeon v. Eastern Shore Hosp. Center, supra,* 300 Md. at 525–532, 479 A.2d 921, suggest that an individual guilty of violating the plaintiff's constitutional rights would be entitled to immunity.

Moreover, with regard to clothing a public official with a degree of governmental immunity, there are sound reasons to distinguish actions to remedy constitutional violations from ordinary tort suits. The purpose of a negligence or other ordinary tort action is not specifically to protect individuals against government officials or to restrain government officials. The purpose of these actions is to protect one individual against another individual, to give one person a remedy when he is wrongfully injured by another person. Issues of governmental immunity in this context concern whether, and to what extent, as a policy matter, a governmental official or entity is to be treated like an ordinary private party. *See James v. Prince George's County, supra,* 288 Md. at 329–336, 418 A.2d 1173.

On the other hand, constitutional provisions like Articles 24 or 26 of the Maryland Declaration of Rights, or Article III, § 40, of the Maryland Constitution, are specifically designed to protect citizens against certain types of unlaw-

ful acts by government officials. To accord immunity to the responsible government officials, and leave an individual remediless when his constitutional rights are violated, would be inconsistent with the purpose of the constitutional provisions. It would also, as frankly recognized by counsel for Officer Leonard in this Court, largely render nugatory the cause of action for violation of constitutional rights recognized in *Widgeon, Mason, Heinze, Weyler,* and other cases.

As Officer Leonard was not entitled to immunity with regard to the counts based on violations of Articles 24 and 26 of the Maryland Declaration of Rights, it was error to grant summary judgment for Officer Leonard on those counts.

JUDGMENTS IN FAVOR OF THE DEFENDANTS MAYOR AND CITY COUNCIL OF BALTIMORE, POLICE DEPARTMENT OF BALTIMORE CITY, AND POLICE COMMISSIONER OF BALTIMORE CITY, AFFIRMED. JUDGMENT IN FAVOR OF THE DEFENDANT LEONARD AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. PLAINTIFFS TO PAY TWO THIRDS OF COSTS AND DEFENDANT LEONARD TO PAY ONE THIRD OF COSTS.